**BOWLES, Price Administrator, v. BABCOCK.**

**Civil Action No. 2733.**

District Court, D. Maryland.
March 11, 1946.

Francis Key Murray, Hugo Riccuti, and Edward F. Engelbert, all of Baltimore, Md., for the Administrator.

Edward A. Smith, of Baltimore, Md., for defendant.

**WILLIAM C. COLEMAN**, District Judge.

This is a treble damage suit brought by the Price Administrator, Office of Price Administration, under Section 205(c) and (e) of the Emergency Price Control Act of 1942, as amended by the Stabilization Extension Act of 1944, 50 U.S.C.A.Appendix § 925(c, e), against the defendant, a landlord in the town of Mt. Rainer,

Maryland, embraced in the defense rental area in Montgomery and Prince George's Counties, for an alleged violation of a maximum rent regulation for housing promulgated under the provisions of the aforementioned statutes and of an order issued in connection therewith by the Rent Director for that area.

The material facts involved in the present suit, which are not disputed, are as follows: Effective July 1, 1942, the Price Administrator duly issued Maximum Rent Regulation No. 25 (8 F.R. 7322) applicable to the present defendant's premises. Section 2 of this regulation prohibits the demand or receipt of rent in excess of the applicable ceiling price established in the regulation which has continued in effect up to the present time. On December 14, 1943, the defendant having changed her apartment premises from unfurnished to a furnished apartment, rented them as the latter for the first time at the rate of $100 a month but did not file a registration of same until October 14, 1944. On November 25, 1944, the Area Rent Director reduced the rent to $72.50 a month, "effective beginning with the next regular rent payment period." Shortly thereafter, however, he notified the landlord that this order would be modified making the reduction in rent retroactive to December 14, 1943, that is, to the commencement date of the leasing of the premises as a furnished apartment. The landlord by this notice was given an opportunity to file any objection he might have to the proposed modification of the order. He made no formal objection, however, and on December 30, 1944, a new order was issued, changing the order of November 25, and reading as follows: "Issued Dec 30 1944 and effective beginning from the date of the first renting or from the beginning of the first rental period on or after October 1, 1943, whichever is the later. No rent in excess of the Maximum Rent established by this order may be received or demanded. This order will remain in effect until changed by the Office of Price Administration." The later order also contained the following notation which was not embraced in the earlier order, due, as counsel for the Administrator claimed at the trial, to an oversight: "All rent received by you since the effective date of this order, in excess of the maximum legal rent established hereby, namely $72.50 per mo. is subject to refund to the tenant. Upon your failure to make such refund

within 30 days from the date hereof, the excess payment received will be considered an overcharge within the meaning of sec. 205(e) of the Emergency Price Control Act of 1942, as amended, subjecting you to a damage action in accordance with that section."

Pursuant to the terms of this last order, the tenant became entitled to a refund of $27.50 per month from December 14, 1943, to November 11, 1944, on which latter date defendant had begun charging, and thereafter, continued to charge the tenant on the basis of the reduced rental namely, $72.50 a month. The defendant having made no refund whatsoever to the tenant and the tenant having instituted no suit against the defendant for a refund, on September 6, 1945, the Administrator instituted the present proceeding, claiming damages at the rate of $27.50 a month for approximately eleven months from December 14, 1943, to November 11, 1944, which, when trebled, totals $990.

The defendant has moved to dismiss the Price Administrator's complaint on two major grounds: First, that the suit being for damages of a retroactive character, is not authorized by the Emergency Price Control Act of 1942, as amended by the Stabilization Extension Act of 1944; and second, that in any event all but very limited refund is barred by limitations. This latter contention, stated more specifically, is twofold, as follows: (1) That since the present suit was not filed until September 6th, 1945, if the defendant be liable for any overcharge, such must be confined to the months of September, October and November, 1944, because of the one year limitation provision in the Act; and (2) that under no circumstances could the Act be made retroactive beyond June 30, 1944, the date of its enactment, because the Act, by its very terms, prohibits so doing.

The Price Administrator, on the other hand, contends that the Area Rent Director's order of December 30, 1944, must be given a strictly literal interpretation and that therefore, since it expressly relates back to the origin of the lease, full effect must be given to the order's retroactive character. In support of this contention, the Price Administrator relies upon Section 4(j) of Rent Regulation for Housing. This Section, originally effective July 1, 1943, has several times been amended. At the time of the issuance of the order of December 30, 1944, as well as on the date

when by its terms it became retroactively effective, that is, December 14, 1943, this Section read as follows:

"*Maximum rents.* Maximum rents (unless and until changed by the Administrator as provided in section 5) shall be: * * *

"(j) *Changed on or after July 1, 1943 or the effective date of regulation, whichever is the later, from unfurnished to furnished.* For housing accommodations changed on or after July 1, 1943 or the effective date of regulation, whichever is the later, from unfurnished to fully furnished, the first rent for such accommodations after such change. The Administrator may order a decrease in the maximum rent as provided in section 5(c) (1).

"Within 30 days after the accommodations are first rented fully furnished, the landlord shall register the accommodations as provided in section 7. If the landlord fails to file a registration statement within the time specified, the rent received from the time of such first renting shall be received subject to refund to the tenant of any amount in excess of the maximum rent which may later be fixed by an order under section 5(c) (1). In such case, the order under section 5(c) (1) shall be effective to decrease the maximum rent from the time of such first renting. The foregoing provisions and any refund thereunder do not affect any civil or criminal liability provided by the act for failure to file the registration statement required by section 7." 8-F.R. 9020, 9 F.R. 11336-7.

It is clear that defendant did not violate the first order dated November 25, 1944, because not merely "beginning with the next regular rent payment period," as expressly provided in that order, but beginning on November 11, 1944, defendant has charged only the reduced rent, and in this order there was no retroactive provision.

It is equally clear that defendant could not, as respects any refund that might be required by the second order dated December 30, 1944, have violated the terms of that order until January 30, 1945, because he was given, by the express language of that order, thirty days from its date within which to make any such refund.

Likewise, except as to any refund that might be required with respect to rent collected prior to November 11, 1944, defendant cannot be found to have violated this second order because ever since that date

defendant has charged only on the basis of the reduced rent, namely, $72.50.

The Emergency Price Control Act of 1942 provides that an action of the present kind must be brought "within one year from the date of the occurrence of the violation." Sec. 205(e), 50 U.S.C.A.Appendix § 925(e). Also, by the amendment of June 30, 1944, "actions by buyers or actions which may be brought by the Administrator only after the buyer has failed to institute an action within thirty days from the occurrence of the violation," are barred except as to "violations occurring after the date of enactment of this Act * * *." 50 U.S.C.A.Appendix § 925 note.

█ That the validity of a price regulation is a matter within the exclusive jurisdiction of the Emergency Court of Appeals, and therefore cannot be adjudicated in the present proceeding, is no longer open to question. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339; Bowles v. Meyers, 4 Cir., 149 F.2d 440; Bowles v. American Brewery, 4 Cir., 146 F.2d 842. Furthermore, we take full cognizance of the fact that the Emergency Court of Appeals in Womack v. Bowles, 146 F.2d 497, has held that orders of an Area Rent Director reducing rents retroactively to the date of the first renting in accordance with the provisions of Sec. 4(j) of Rent Regulation for Housing, which is the same provision upon which the Price Administrator relies in the present case, were proper, namely, that that provision is a valid regulation. However, while consideration of the validity of regulations and orders of the Price Administrator and of his duly authorized subordinates is reserved exclusively for the Emergency Court of Appeals, the enforcement of them is, by Section 205 of the Act upon which the Price Administrator bases the present action, reposed in the District Courts which, if this jurisdiction means anything, must have the power to determine the legal effect of a particular regulation or order when applied to the particular facts as presented. The provisions of Section 205 of the Act with which we are here concerned were not involved in the Womack case, supra. All that the Emergency Court of Appeals decided in that case was the validity per se of section 4(j) of the Rent Regulation for Housing. That Court's judgment merely dismissed the landlord's complaint. That suit was not, as is the present suit, one for damages under Section 205 of the Act. Thus, no such question as is here presented was adjudicated or considered in that case, namely, whether the present defendant's failure to comply with the Area Rent Director's order of December 30, 1944, is to be treated, for the purpose of determining whether limitations have run, as a violation of that order, or as a violation of Section 4(j) of the Rent Regulation for Housing, assuming both the order and the regulation to be valid. If the former, the Administrator's suit is not completely barred by limitations, but if the latter, it is so barred, and other points raised by defendant's motion need not be considered.

In determining this question we agree with the Administrator that it is not defendant's failure to comply with the registration requirements of Section 4(j) of the Rent Regulation for Housing, but her failure to comply with the order of December 30, 1944, that must be taken as the violation, although there would be no warrant for the retroactive provision in the order of December 30, 1944, except for Section 4(j) of the Regulation. The order of November 25, 1944, of which the order of December 30, 1944, is an amendment, contained no retroactive provision. The Administrator's complaint is in error in alleging that it does. The complaint until amended at the trial did not even refer to the later order. This order does not, it is true, by its terms, refer to Section 4(j) of the regulation but, as just stated, without that Regulation, no matter what the order's terms might be, it could have no retroactive effect. We do not mean to say that the failure to incorporate, by express reference, Section 4(j) of the Regulation in the order of December 30, 1944, is a controlling factor. Whether so incorporated or not, the language employed in the order is sufficient to indicate that the order and the regulation are intended to be treated as integrated. However, Section 205(e) of the Act creates a right of action for violation of "a regulation, order, or price schedule prescribing a maximum price or maximum prices * * *." Section 4(j) of the regulation did not itself prescribe the maximum rent. The order of December 30, 1944 did.

Effective March 1, 1945, Section 4(j) of the regulation was amended, striking out

the sentence beginning with the words, "In such case," in the section as above quoted and substituting therefor the following: "Such amount shall be refunded to the tenant within 30 days after the date of issuance of the order. If the Administrator finds that the landlord was not at fault in failing to file a proper registration statement within the time specified, the order under section 5(c) (1) may relieve the landlord of the duty to refund. Where a proper registration statement was filed before March 1, 1945, the landlord shall have the duty to refund only if the order under section 5(c) (1) is issued in a proceeding commenced by the Administrator within three months after the date of filing of such registration statement." 10 F.R. 2401.

▮ In the present case, the defendant, as we have seen, registered prior to March 1, 1945, and also the proceeding by the Administrator (not the present suit) was commenced prior to September 1, 1945. Thus, although the amendment to Section 4(j) of the regulation, as above set forth, occurred both after defendant's failure to register and after the order of December 30, 1944; and although it is made applicable by its terms retroactively to instances where the registration statement might be filed as late as was the one in suit, and indicates that a need was felt by the Office of Price Administration to cure the indefiniteness that previously existed in this Section of the regulation as to the period within which refunds would be effected, it, nevertheless, cannot over-ride the provisions of the Act itself with respect to limitations as applied to the present suit. This does not mean that the regulation is invalid but merely that the statutory periods of limitations determine whether it is inoperative in the present suit—a suit which invokes a right and a remedy that are both purely statutory—created by Section 205(e) of the Act. The requirement to refund exists by virtue of the regulation, independently of Section 205(e). The latter provides damages, under certain specified conditions, if the refund is not made.

▮ Applying to the facts in the present case the reasoning above set forth, the "violation" occurred 30 days after December 30, 1944, that is to say, when the defendant was first in default with respect to any refund he had been *ordered* to make. It was then that the "violation" contemplated by Section 205(e) first occurred.

The present suit was brought on September 6, 1945. As we have seen, an action of the present kind (1) must be brought "within one year from the date of the occurrence of the violation"; and (2) is barred except as to "violations occurring after the date of enactment of this Act," namely, June 30, 1944. Therefore, while the present suit is not completely barred, nevertheless, because of the one year limitation, recovery is limited to excess rent charged since September 6, 1944, up to November 11, 1944. The other limitations provision becomes of no independent effect in the present case. It is not to be construed as altering the one year provision in Section 205(e) but merely as setting a deadline, so to speak, back of which *no* violation could be made the basis of a suit. It cannot have the effect of setting a deadline for *every* suit, regardless of the one year provision.

The above conclusion is supported by the final clause in the regulation, namely, that "The foregoing provisions and any refund thereunder do not affect any civil or criminal liability provided by the Act *for failure to file the registration statement* required by section 7" (italics inserted). This provision, which is free from any ambiguity, must be construed as embracing in its reference to civil liability, the provisions of Section 205 of the Act which is the basis of the present suit. If this be true, and if, as Section 4(j) states, its "provisions and any refund thereunder do not affect" this civil liability, the provision in Section 205 of the Act placing *limitations* upon liability must be given full effect, just as must the provisions which aim to *impose* liability.

▮ There remains to be considered whether the Administrator is entitled to treble damages, that is, three times the excess rent charged between September 6, 1944, and November 11, 1944. By the 1944 amendment to Section 205(e) treble damages are not to be assessed "if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation."

We are satisfied that in the present case the defendant has sustained this burden of proof. Prior to the first order of November 25, 1944, defendant had fully complied with its terms. It contained no retroactive pro-

vision. Therefore, when more than a month later the defendant was ordered for the first time to make a refund dating back for more than a year, it cannot reasonably be said that defendant's violation of the later order was wilful. Certainly, she had taken "practicable precautions against the occurrence of the violation" as early as November 11, 1944, and we are not disposed to say that the mere failure to file a registration statement within the time required is sufficient to constitute the kind of failure, earlier than the last mentioned date, to have taken such precautions as to demand the application of the treble damage provision of Section 205(e).

For the reasons herein given defendant's motion to dismiss must be granted, except as respects the amount of rent charged by the defendant in excess of $72.50 per month from September 6, 1944, to November 11, 1944, with leave granted defendant to answer, if there are additional facts, not heretofore agreed to and material to the rent period just stated.