## CREEDON v. MOLYNEAUX et ux.
### Civ. No. 3297.

District Court, D. Maryland.
Nov. 6, 1947.

<sup></sup>4

Harold L. Wurtheimer, of Philadelphia, Pa., and Thomas E. Barrett, Jr., of Baltimore, Md., for plaintiff.

Morris D. Hyman, of Baltimore, Md., for defendants.

CHESNUT, District Judge.

This suit was originally filed on November 26, 1946 by Paul A. Porter, Administrator, against the defendants as landlords, to compel a refund of overcharges for rent, pursuant to a retroactive order of the Price Administrator effective 30 days after October 27, 1944. As the suit was not brought until more than a year after the effective date of the order for refund, the question is whether it is not barred by the one-year limitation for such suits, to be found in the Emergency Price Control Act, as amended, 50 U.S.C.A.Appendix, § 925(e). On June 6, 1947, the Housing Expediter was substituted as plaintiff. Plaintiff contends that the suit is not barred because he is basing his right to require refund to the tenant (not a party to the case) on section 205(a) of the Act, § 925(a), 50 U.S.C.A. Appendix.[1]

As a result of a recent final hearing of the case I find the following facts:

1. From 1940 until about the time of the filing of this suit in 1946, the defendants were landlords of the property at 5301 R. Street, Coral Hills, Montgomery County, Maryland. In 1940 and part of 1941, the second floor apartment unfurnished had been rented to certain tenants at $71 per month. Thereafter and until February 1943 the apartment was not rented; but shortly before February 1943 Mr. Molyneaux was called into the Military Service and Mrs. Molyneaux, in order to increase her income, expended about $800 to furnish the apartment which, on or about February 15, 1943, was rented to Mr. and Mrs. John G. Geyer as tenants at the sum of $100 per month. Mrs. Molyneaux who is

[1] "Sec. 925(a) Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act [section 904 of this Appendix], he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

a clerk in the United States Social Security Office in Washington, D. C. testified without contradiction that when the apartment was rented to the Geyers she obtained from the local OPA Office a registration form and after filling it out with the assistance of a neighbor, sent it to the OPA Office. It is apparently not to be found in the office files. There is some uncertainty as to whether it was addressed to the OPA Office in Washington or at the more proper local office in Silver Spring, Maryland.

2. Mrs. Molyneaux testified that the Geyers became to her undesirable tenants and she gave them 30 days' notice to vacate. They apparently vacated the premises about October 27, 1944, but prior to doing so they visited the local OPA Office and made some complaint with regard to the rental. Thereafter the Area Rent Director, after notice to the landlords by retroactive order, reduced the rent from $100 per month for the furnished apartment to $67.50 per month, and made an order for refund retroactive from October 1, 1943 to October 27, 1944, and ordering a refund of $390. The order was made retroactive on the ground that the apartment had not been registered within the time required by the regulations. Mrs. Molyneaux protested, contending that she had originally and within the due time registered the apartment. She was asked for some corroboration and says that she thereupon obtained and mailed to the Area Rent Director the affidavit of a friend who had assisted her in completing the form and knew that she had mailed the registration statement. But apparently the Area Rent Director did not find these papers in the file. The protest was overruled and the retroactive order for refund from October 1, 1943 to October 23, 1944 amounted to $390. This order was dated October 27, 1944, and became effective within 30 days. The order was reviewed and affirmed.

3. Subsequently Mrs. Molyneaux made a compromise offer for refund but on March 15, 1946 the local enforcement attorney at the Baltimore office (to which the proceedings had been transferred from Silver Spring, Maryland) by letter advised that as more than a year had elapsed since the effective date of the order for refund "You may therefore consider the case closed with reference to the violations alleged to have occurred in the rental of accommodations to Mrs. J. H. Geyer". Subsequently, and without further advice to or communication with the defendant landlords, this suit was filed on November 26, 1946.

4. It further appeared at the hearing that the reason for filing the suit despite the prior ruling that the case had been closed, was that the tenants, who had moved to another State, complained that they had not received any refund of rent. It also appeared that after the suit was brought the New York Regional Office advised the Baltimore office that in view of the prior letter stating that the case had been closed, the suit should be dismissed; but on review, the contrary position was taken by an Enforcement Attorney in Washington. Therefore the suit is still being pressed by the Housing Expediter who has succeeded the Administrator under Presidential orders of transfer of activities.

5. The overcharged tenants vacated the premises about three years ago and there is no charge or showing in the complaint that the defendants have made any overcharges to any tenant subsequent thereto. And the defendants are not now and for some time past have not been owners or landlords of the premises.

### Discussion

While I have summarized the principal facts brought out at the hearing, it is clear enough that we have no jurisdiction or authority to consider the validity or effectiveness of the order for refund dated October 27, 1944. The sole question, therefore, presented is whether the suit is not barred by the time limitation in section 925(e), 50 U.S.C.A.Appendix, as amended July 25, 1946, which limits suits for violations of OPA regulations by the tenant or by the Administrator to a period of "within one year from the date of the occurrence of the violation". In numerous recent cases in this court it has been held that suits of this character may be and must be brought within one year from 30 days after the date of the retroactive adminis-

trative order for refund to the tenant. And if suit is thus brought within a year the recovery may be for overcharges for rent occurring more than one year prior to the suit. See Creedon v. Babcock, 4 Cir., 1947, 163 F.2d 480; Fleming, Adm'r v. Schleicher, D.C.Md., 72 F.Supp. 895. Cf. Creedon v. Stoen, 6 Cir., 163 F.2d 393.

■ The only contention of the plaintiff in avoidance of the bar of the statute is that his claim is based on section 925(a) and not on section 925(e) and, therefore, the year period for the suit is not applicable. Blood v. Fleming, 10 Cir., 161 F.2d 292. But I am unable to agree with this contention. Section 925(a) is obviously an equitable remedy rather than a legal one. It principally contemplates injunctive relief to forbid continued acts or practices "which constitute or will constitute a violation of any provision of section 4 of this Act [section 904 of this Appendix], * * * and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond." It seems entirely clear that the present suit is not properly grounded on section 925(a). There is no showing that the defendants were about to engage in violations in the future. The tenant overcharged vacated the premises about three years ago and the landlords no longer own the property. The order for refund constituted a debt which could have been recovered either by the tenants or by the Administrator if suit was brought within one year in accordance with section 925(e). The claim now made is one of an essentially legal nature as distinguished from an equitable remedy, as contemplated by section 925(a).

It is true that section 925(a) authorizes "a permanent or temporary injunction, restraining order, or other order". And in Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 332, it was held, in a case properly brought under section 925(a), that the court might in its discretion if deemed equitable and desirable, make an order for the restitution of overcharges for rent as incidental to the other relief properly prayed for. But in the opinion, 328 U.S. pp. 401, 402, 66 S.Ct. 1090, 1091, the distinction between the nature of the enforcement provision in sections 205(a) and 205(e) of the Act is pointed out by the court, and it is said: "To the extent that damages might properly be awarded by a court of equity in the exercise of its jurisdiction under § 205(a), see Veazie v. Williams, 8 How. 134, 160, 12 L.Ed. 1018, § 205(e) supersedes that possibility and provides an exclusive remedy relative to damages. It establishes the sole means whereby individuals may assert their private right to damages and whereby the Administrator on behalf of the United States may seek damages in the nature of penalties. Moreover, a court giving relief under § 205(e) acts as a court of law rather than as a court of equity. But with the exception of damages, § 205(e) in no way conflicts with the jurisdiction of equity courts under § 205(a) to issue whatever 'other order' may be necessary to vindicate the public interest, to compel compliance with the Act and to prevent and undo inflationary tendencies."

But my view is that this suit was not properly brought under section 925(a). It is true that the complaint states that it is filed "pursuant to section 205(a) of the Act" (and) "the Administrator brings this action to enforce compliance with section 4a of the Act". But the only specific relief prayed for is an order requiring the defendants to make a refund of the overcharge of $390 to the tenants. Injunctive relief is not specifically asked and the complaint alleges no basis for equitable relief and indeed prays for none unless it could be implied in the usual and conventional prayer "for such other and further relief as may be just and equitable in the circumstances."

It should also be noted that if the contention now made by the plaintiff in this case is sound, there is no period of limitation (as distinct from the equitable defense of laches) applicable at all to these retrospective orders for the refund of rental. And by the simple nominal shifting of the complaint from section 925(e) where such case properly belongs, to section 925

(a), retrospective orders passed at any time by the Administrator even as much as five years ago, might be made enforceable. In view of the 1944 amendment of section 925(e) which imposes the year limitation, I cannot think it was the intention of Congress to permit the avoidance of the year limitation in suits of this character by simply changing the complaint to base it on section 925(a) instead of section 925(e).

My conclusion of law therefore is that the complaint must be dismissed. Counsel may present the appropriate order in due course.